# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **KENNY W. MCKNIGHT** | * | **DOCKET NO. 07-1654** |
| **VERSUS** | * | **JUDGE JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

On November 5, 2004, Kenny McKnight filed the instant application for Disability Insurance Benefits. (Tr. 69-71).[1] He alleged disability since May 1, 2003, due to two back surgeries and a removed disc. (Tr. 69, 78). The claim was denied at the initial stage of the administrative process. (Tr. 52). Thereafter, McKnight requested and received a December 23, 2005, hearing before an Administrative Law Judge ("ALJ"). (*See*, Tr. 160).[2] However, in a June 28, 2006, written decision, the ALJ determined that McKnight was not disabled under the Act.

---

[1] The Commissioner previously awarded McKnight a closed period of disability from August 1999 through February 21, 2003. (Tr. 233).

[2] The hearing transcript does not appear in the administrative record.

(Tr. 157-167). McKnight appealed the adverse decision to the Appeals Council. On September 28, 2006, the Appeals Council granted McKnight's request for review, vacated the ALJ's decision, and remanded the case to the ALJ for further proceedings. (Tr. 171-172).

On March 1, 2007, a new hearing was held before the same ALJ. (Tr. 231-254). Nonetheless, in an April 2, 2007, written decision, the ALJ again determined that McKnight was not disabled under the Act, finding at Step Five of the sequential evaluation process that he retained the residual functional capacity to make an adjustment to work which exists in significant numbers in the national economy. (Tr. 13-21). McKnight again appealed the adverse decision to the Appeals Council. However, on July 30, 2007, the Appeals Council denied McKnight's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).

On October 3, 2007, McKnight sought review before this court. He alleges the following errors:

(1) the ALJ erred in failing to find that plaintiff met Listing 12.06 at Step Three of the sequential evaluation process;

(2) the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

(3) the ALJ failed to allow plaintiff's counsel to cross-examine the vocational expert at the second hearing.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple

impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520. The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

a) <u>Steps Two and Three</u>:

The ALJ determined at Step Two of the sequential evaluation process that McKnight suffers from severe impairments of "degenerative disc disease of the lumbar spine, generalized anxiety disorder, and depression." (Tr. 18). However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 18, 20).

Plaintiff contends that he meets the listing for anxiety disorder. The relevant section provides:

> 12.06 Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> > A. Medically documented findings of at least one of the following:
> >
> > 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
> >
> > a. Motor tension; or
> > b. Autonomic hyperactivity; or
> > c. Apprehensive expectation; or
> > d. Vigilance and scanning;
> >
> > Or
> >
> > 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
> >
> > 3. Recurrent severe panic attacks manifested by a sudden

unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Or

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Subpart P, App. 1, Section 1.04.

To establish that a claimant's injuries meet or medically equal a Listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See, Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 620.

In his brief, plaintiff argues that he suffers from panic attacks. However, plaintiff testified that he experienced "a panic attack or two." (Tr. 246). To meet Listing 12.06, panic attacks must occur on average at least once per week. 20 C.F.R. Subpart P, App. 1, Section 12.06(A)(3). Moreover, plaintiff has not adduced evidence that he meets any of the other criteria for paragraphs A and B of Listing 12.06.[3] Accordingly, the court finds that the ALJ's Step Three determination is supported by substantial evidence. *See, Selders, supra*; *McCuller v. Barnhart*, 72 Fed. Appx. 155 (5th Cir. 2003).

b) <u>Residual Functional Capacity</u>:

The ALJ next determined that McKnight retained the residual functional capacity to perform sedentary work, reduced by moderate limitations in the ability to: understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, respond appropriately to changes in the work setting, travel in unfamiliar places, and to set realistic goals or make plans independently of others. (Tr. 19-21).[4]

---

[3] There is also no indication that plaintiff is completely unable to function outside of the area of his home for purposes of paragraph C. Rather, plaintiff stated that he goes outside daily, and even goes camping. (Tr. 96, 202).

[4] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

7

Plaintiff first contends that the ALJ failed to properly consider the effects of his pain. Indeed, "[p]ain, alone or in conjunction with other impairments, may be disabling, and the [Commissioner] is obliged to weigh subjective evidence of its existence." *Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir. 1983)(citations omitted). Here, the ALJ fully considered plaintiff's allegations of pain and the alleged significant limitations of his severe impairments, but determined that the limitations were not as disabling as alleged. (Tr. 19-20). The ALJ's decision as to the credibility of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa v. Sullivan, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995); (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa v. Sullivan, supra*; and (5) external manifestations of debilitating pain such as marked weight loss. *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *see also* 20 C.F.R. §§404.1529(C)(3)(I)-(vii), 416.929(c)(3)(I)-(vii) (1993).

The instant record substantially supports the ALJ's determination. For instance, a February 21, 2003, "Final Report" from plaintiff's treating orthopedist, Douglas Brown, M.D., stated that McKnight was at maximum medical improvement. (Tr. 128). He was doing well, and

8

walking without a limp. *Id*. Heel and toe gait were normal; straight leg raising maneuver was negative. *Id*. Reflexes were normal. *Id*. McKnight's back was slightly tender, but spasms were not elicited. *Id*. He reported difficulty arising while holding his baby, but once up, he could hold the baby fine. *Id*. Brown opined that McKnight's range of motion had been reduced by 30 percent, and he had a weakened back. *Id*. He opined that McKnight could perform a light job lifting 20-25 pounds occasionally, but not repetitively. *Id*. Brown concluded that McKnight might need to be re-trained for a sedentary job. *Id*.[5]

Dr. Brown's office notes from February 26, 2004, indicate that plaintiff was doing better. (Tr. 126). He babysat his children, and walked close to an hour per day. *Id*. McKnight lost 30 pounds over the past several months by dieting and exercising. *Id*. The notes indicate that McKnight experienced a certain degree of chronic pain, but that it was lessening. *Id*. His pain increased when he has to bend and pick up his kids. *Id*. Despite prescriptions for Paxil, Elavil, and Darvocet, there was no indication of any side effects. *Id*.

On March 4, 2005, Dr. Brown reiterated that McKnight had reached maximum medical improvement. (Tr. 42). He assigned a 50 percent permanent partial impairment of the whole body. *Id*. Brown assigned permanent restrictions to only occasional bending and lifting up to 25 pounds, and frequent lifting to ten pounds. *Id*. Brown recommended that McKnight be re-trained for sedentary work. *Id*. Plaintiff's pain medication was refilled, but again there was no indication of any limitations due to side effects. *Id*.

---

[5] Dr. Brown thought that McKnight might be unemployable due to his lack of education. *Id*. However, that comment is outside of Dr. Brown's expertise. A physician's statement that a claimant is "disabled" or "unable to work" is not a medical opinion, and is afforded no special significance under the regulations. 20 C.F.R. § 404.1527(e); *see also, Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

Less than two months earlier, on January 19, 2005, David Hebert, M.D., examined plaintiff at the request of Disability Determination Services. (Tr. 131-133). McKnight reported that he first had lumbar disc surgery in 1993. *Id*. He stated that he had spinal fusion in 2002, involving the L4-L5 areas. *Id*. He added that the pain continued, and that he could not do anything physically. *Id*. He recently fell down some steps, injuring his right shoulder, and re-injuring his lumbar spine. *Id*. McKnight denied weight loss. *Id*. He complained of frequent headaches, decreased vision, dizziness, sinus disease, and chronic allergies. *Id*. He was only able to flex his lumbar spine to 40 degrees. *Id*. Straight leg raise test was positive bilaterally. *Id*. His gait and station were completely normal, without assistive devices. *Id*. He was able to walk on his toes and heels, but stated that it excessively hurt his lumbar spine. *Id*. All peripheral joints had a full range of motion. *Id*. He did not appear depressed or anxious. *Id*.

Hebert diagnosed at least a 50 percent loss of normal motion of the lumbar spine, but with no evidence of any neurological deficits in the lower extremities. *Id*. McKnight also had a history of major depressive disorder, currently in remission, and not causing any impairment of mental function. *Id*. Hebert opined that McKnight should lift no more than ten pounds. *Id*. He also stated that McKnight should rarely climb, crawl, or squat due to his degenerative disease of the lumbar spine. *Id*.[6] He would not otherwise limit his ability to perform routine walking, standing, or sitting. *Id*.

On May 17, 2006, John Ledbetter, M.D. evaluated plaintiff. (Tr. 37-39). He indicated that McKnight was a former patient whom he had not seen since 2001. *Id*. McKnight reported

---

[6] These limitations would not significantly compromise the residual functional capacity for sedentary work. *See*, SSR 96-9p.

that he last saw Dr. Brown fourteen months earlier. *Id*. He complained of continued lower back pain, bilateral leg pain, and tightening in his hips. *Id*. He exhibited pain in his lower back with bending. *Id*. Standing and walking were difficult if he did it very long. *Id*. Weather changes caused a lot of pain. *Id*. He took Lortab three to four times per day. *Id*. He denied numbness or weakness in lower extremities. *Id*. He experienced difficulty sleeping and appeared somewhat depressed. *Id*. His pain was 50 on a 100 point scale. *Id*. Yet, he took care of his two daughters.

Upon examination, there was no apparent lower extremity wasting. *Id*. His gait was slightly antalgic. *Id*. McKnight exhibited pain with back extension and quadrant loading. *Id*. He experienced pain with bending forward at the waist. *Id*. Straight leg raising was negative bilaterally. *Id*. There were no muscle spasms in the lower back. *Id*. He had mild lumbar paraspinous tenderness. *Id*. Ledbetter diagnosed lumbar post laminectomy syndrome with chronic lower back and bilateral leg pain; history of lumbar facet arthropathy, sleep disturbance, and history of depression. *Id*.

Dr. Ledbetter's notes from June 12, 2006, indicate that plaintiff had recently slipped and fallen in the shower, and that he had since experienced difficulty with prolonged sitting and a popping sensation in his lower back. (Tr. 40-41). He rated his pain as a five out of ten. *Id*. Nonetheless, plaintiff was non-sedated, and was only in "mild distress" due to pain. *Id*. He was alert and oriented, and his cognition was intact. *Id*. His motor and sensory examination was intact to bilateral lower extremities. *Id*. There was some midline lumbar paraspinous tenderness to palpation, and tenderness to the bilateral SI joints and gluteal muscles. *Id*. His gait was stiff, but not antalgic. *Id*.

Dr. Ledbetter's notes from August 31, 2006, indicate that McKnight was taking

Cymbalta, Lortab, and Ambien. (Tr. 205-206). Despite an anxiety attack due to an increased dosage of Cymbalta, McKnight reported that **overall he was not suffering any side effects from his medication** and that he was able to manage and increase his function overall. (Tr. 205-206). He was not sedated, and rated his pain as a three on a ten point scale. *Id*. McKnight appeared to be in good spirits. *Id*.

Ledbetter's notes from November 22, 2006, state that McKnight exacerbated his condition after he held up his pop-up camper for an extended period. (Tr. 202). He rated his pain as 30/100. *Id*. He was alert and oriented; cognition was intact; he was non-sedated, and in no acute distress. *Id*. Motor and sensory examination of the upper and lower extremities was grossly intact. *Id*. Seated leg raise was negative for radicular complaints bilaterally. *Id*. Ledbetter diagnosed low back pain with lumbar postlaminectomy syndrome and history of leg pain; sleep disturbance; and anxiety. *Id*. Plaintiff was to continue taking Cymbalta, change his Ambien to Ambien CR, refill Lortab, Robaxin, and Motrin, as needed. *Id*. The report does not document any side effects from medication. *Id*.

According to Dr Ledbetter's December 19, 2006, notes, McKnight was managing his pain fairly well on his medication regimen and he was "very pleased." (Tr. 201). McKnight reported that his pain medication had increased his quality of life. *Id*. His anxiety was well-treated by medication. *Id*. His gait was normal; he stood on his heels and toes without difficulty. *Id*. Seated straight leg was negative bilaterally. *Id*. Ledbetter changed McKnight's Cymbalta prescription to Paxil CR which had worked well in the past, and **caused no apparent side effects**. *Id*. Plaintiff's non-sedated pain was a one on a ten point scale. *Id*.

On January 17, 2007, despite radiating back pain, McKnight rated his pain as a two out of

ten. (Tr. 199). He was scheduled for bilateral sacroiliac injections. *Id*. The injections were subsequently administered on February 28, 2007, and McKnight reported almost complete pain relief following the procedure. (Tr. 198).

The foregoing medical summary does not support plaintiff's allegations of debilitating pain. Other than two isolated instances, plaintiff reported to his physician that his pain was no more than a three on a ten point scale, in an un-sedated condition. At the hearing, plaintiff complained that his medication caused side effects of dizziness, drowsiness, and hot flashes. (Tr. 245-248). However, these complaints were not reflected in plaintiff's treatment records. In fact, plaintiff told his doctor that he was "very pleased" with his pain medication and that it did not cause any side effects. (Tr. 201, 205-206).[7] Moreover, plaintiff testified that he takes care of his one and four year old daughters during the day. (Tr. 239).[8] There is nothing in plaintiff's most recent medical records to undermine the 2005 assessments by the treating and consultative physicians that he retained the residual functional capacity for sedentary work.

Plaintiff also contends that the ALJ failed to adequately consider the effects of his mental impairments. However, the ALJ addressed plaintiff's mental impairments and fully incorporated the functional limitations assessed by a non-examining agency physician in the wake of a

---

[7] The ALJ noted these observations and comments from the medical record in his decision. (Tr. 18).
 Plaintiff argues that the ALJ "refused to receive evidence of the medication contradictions [sic] which were downloaded from the U.S. National Library of Medicine." (Pl. Memo., pg. 6). According to the transcript, however, the ALJ simply said that he was already familiar with the drugs and their side effects, but that plaintiff could "go over it by way of testimony." (Tr. 234-235).

[8] Plaintiff's wife testified that her mother-in-law keeps the children because McKnight cannot even take care of himself. (Tr. 242). In contrast, plaintiff stated that his mother helped him out with the kids only a little. (Tr. 239).

February 15, 2005, psychological examination.[9] Of course, an ALJ may properly rely on a non-examining physician's assessment when, as here, "those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991)(quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)). In sum, the undersigned finds that the ALJ's residual functional capacity assessment is supported by substantial evidence.

c) <u>Steps Four and Five</u>

With the help of a vocational expert ("VE"), the ALJ found that McKnight's residual

---

[9] On February 15, 2005, David Williams, Ph.D., conducted a mental status examination at the request of Disability Determination Services. (Tr. 134-136). McKnight's daily activities included watching his two-year old daughter, washing clothes, and being "Mr. Mom." *Id*. He reported that he took Lortab every three to four hours. *Id*. He complained of depression related symptoms, dysphoria, sleep disturbance, and concentration problems. *Id*. He could read and spell on a 6th grade level. *Id*. He was able to interact appropriately on a 1:1 basis. *Id*. Social judgment was marginally adequate. *Id*. His insight was fair. *Id*. He was able to manage household chores, recognize safety hazards, utilize public transportation, manage his finances, and read and write with basic facility. *Id*. Concentration was marginally adequate. *Id*. He was easily distracted and frustrated. *Id*.
   Williams diagnosed generalized anxiety disorder, depressive disorder NOS, rule out pain disorder, learning disorder, and borderline intellectual functioning. *Id*. He assigned a current GAF of 60. *Id*. His academic weaknesses were not believed to limit his ability to return to work. *Id*. His understanding was intact; he was able to remember simple instructions and carry through with work-like procedures. *Id*. Sustained concentration was marginally adequate secondary to his anxious mood. *Id*. Persistence was marginally adequate. *Id*. Williams exhibited mild limitations in his ability to sustain activity due to psychological problems. *Id*. Social interaction was marginally adequate. *Id*. He was mildly limited due to anxiety and depressed mood. *Id*. Prognosis was guarded. *Id*.
   Non-examining agency physician, Jack L. Spurrier, completed a Mental Residual Functional Capacity Assessment on March 9, 2005. (Tr. 137-140). He indicated that McKnight suffered moderate limitations in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted; interact appropriately with the public; respond appropriately to changes in work setting; travel in unfamiliar places; and to set realistic goals or make plans independently of others. *Id*.

14

functional capacity did not permit him to perform the duties of his past relevant work. (Tr. 20-21, 119-122). Accordingly, the ALJ proceeded to Step Five of the evaluative process. He noted that claimant was 43 years old, and thus qualified as a younger individual under the regulations. (Tr. 14, 21). Moreover, plaintiff received a high school education. (Tr. 14, 21, 82). The ALJ submitted interrogatories to a VE, and relied upon her responses thereto to find that McKnight could make an adjustment to work as a telephone quotation clerk, charge accountant clerk, and stone setter and that such jobs exist in significant numbers in the regional and national economy. (Tr. 20-21, 119-122).

Plaintiff argues that the ALJ "refused" to allow a VE to testify at plaintiff's second hearing. (Pl. Memo., pg. 9). However, the transcript does not indicate that plaintiff's counsel sought to ask any questions from the VE who was present at the second hearing. (Tr. 231-254). In lieu of VE testimony at the second hearing, the ALJ stated in his decision that he relied upon the interrogatory responses submitted by the prior VE because plaintiff's residual functional capacity remained constant. (Tr. 20).

There is no question that social security claimants enjoy the due process right to cross-examine the Commissioner's experts. *Tanner v. Secretary of Health and Human Services*, 932 F.2d 1110, 1111 (5th Cir. 1991). Here, the ALJ forwarded the vocational expert's interrogatory responses to plaintiff prior to his initial decision and afforded him ten days to submit additional questions or to request a hearing. (Tr. 124-125). However, plaintiff, who was unrepresented at the time, did not respond to the ALJ's offer. (*See*, Tr. 160).

In *Tanner*, the Fifth Circuit suggested that "in the case of reports received after the close of an administrative hearing, a waiver of the right to cross-examine 'must be clearly expressed or

15

strongly implied from the circumstances.'" *Tanner, supra* (citing *Lonzollo v. Weinberger*, 534 F.2d 712, 714 (7th Cir. 1976); *Wallace v. Bowen*, 869 F.2d 187, 191, 193 (3d Cir. 1988)).[10] In *Tanner*, however, the claimant's attorney raised objections to the interrogatories posed to the vocational expert. *Tanner, supra*. Here, McKnight did not so object. Moreover, although the ALJ did not notify claimant and his attorney at the second hearing that he intended to rely on the initial VE's responses to interrogatories, he recited the prior residual functional capacity and the prior VE's opinion. (Tr. 240). Nonetheless, plaintiff's counsel did not pose any questions to the VE who was present at the second hearing.

Even if the ALJ violated plaintiff's due process rights, plaintiff must still demonstrate resulting prejudice. *Curtis v. Commissioner Social Sec. Admin.*, 2008 WL 919692 (W.D. La. Feb. 27, 2008) (citing *Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir.1981) (must show substantial prejudice in order to prove denial of due process in an administrative proceeding)). Plaintiff argues that the VE did not have the opportunity to comment upon additional limitations stemming from plaintiff's pain and medication side effects. However, to avoid reversible error, a hypothetical posed to the vocational expert need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994); *Weimer v. Astrue*, 2008 WL 2604995 (5th Cir. Jul. 1, 2008) (unpubl.). Here, the ALJ's interrogatory to the VE included all of the limitations recognized in his residual functional capacity assessment, and that assessment is supported by substantial evidence. *See*, discussion, *supra*.[11]

---

[10] Unlike the instant circumstances, the claimants in *Lonzello* and *Wallace*, *supra*, were not notified that they could request a supplemental hearing.

[11] The ALJ's Step Five determination also requires consideration of vocational factors such as the claimant's age, education, and past work experience. *See*, 20 C.F.R. § 404.1520.

Plaintiff further contends that the VE responses from February 2006 do not reflect available jobs at the time of the April 2007 decision. However, the VE identified three occupations that plaintiff could perform which exist in significant numbers in the national and regional economies. *See*, *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).[12] There is no indication that the incidence of these jobs materially declined during the fourteen month intervening period between the VE's opinion and the ALJ's subsequent decision. Accordingly, plaintiff has not demonstrated that he was prejudiced by his failure to cross-examine the VE.

For the reasons set forth above, the undersigned finds that the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten**

---

Although at the time of the ALJ's subsequent decision, McKnight was one year older than the interrogatory posed to the VE, he remained a "younger" individual under the regulations. 20 C.F.R. § 404.1563(c).

Further, there is record evidence that despite completing the twelfth grade, plaintiff actually functioned on a sixth grade reading level. (Tr. 134-136). However, at least one of the occupations identified by the VE – Stone Setter (Dictionary of Occupational Titles ("DOT") Code 735.687-034), has reasoning, mathematical, and language development requirements that are less than that necessary for plaintiff's past relevant work as a Plastics Spreading Machine Operator (DOT Code 554.382-014). *See*, Tr. 120-121.

[12] The VE opined that for the Telephone Quotation Clerk position, there were 93,810 jobs in the national economy and 1,283 jobs in the regional economy; for the Charge Account Clerk position there were 38,667 jobs in the national economy and 743 jobs in the regional economy; and for the Stone Setter positions, there were 28,493 jobs in the national economy and 346 jobs in the regional economy. (Tr. 121).

17

**(10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 15th day of August, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE